IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LAURIE NORBERRY, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:07-1268 |
| LIFE INSURANCE COMPANY OF ) | Judge Trauger |
| NORTH AMERICA and ) | |
| ELECTRONIC DATA SYSTEMS ) | |
| CORPORATION, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment (Docket No. 20)[1] filed by defendant Life Insurance Company of North America ("LINA"), to which plaintiff Laurie Norberry has responded (Docket No. 30), and the defendant has replied (Docket No. 34). The plaintiff filed a supplemental response (Docket No. 50), to which the defendant replied (Docket No. 51).

**I.    Introduction**

On December 21, 2007, plaintiff Laurie Norberry filed this action against her former employer, Electronic Data Systems Corporation ("EDS"), and LINA pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq*,. alleging that she is entitled to short-term disability benefits, long-term disability benefits, and health care benefits. (Docket No. 1). The plaintiff also claims that, in denying her short-term

---

[1]On March 10, 2008, defendant Life Insurance Company of North America filed its motion to dismiss or, alternatively, for summary judgment. (Docket No. 20). On May 2, 2008, the court ordered that the motion be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Docket No. 40).

1

disability, long-term disability, and health care benefits, EDS and LINA breached their fiduciary duties to her.

## II. Facts[2]

### A. Norberry's Medical and Claims History

Laurie Norberry was employed by EDS from May 1985 until October 1997. In 2003, she began to experience back problems in the cervical or neck region. She underwent her first cervical spine surgical procedure in November 2003. She was out of work approximately eight to ten weeks. During this time she received short-term disability benefits through her employer-provided benefit plan.

In February 2004, Ms. Norberry resumed her employment at EDS, returning gradually over a period of weeks. By March 2004, she was working full-time hours again.

In August 2005, she underwent a second cervical spine surgery. Her last day of work prior to surgery was July 29, 2005. She sought and received short-term disability benefits through her employer-provided plan, beginning August 1, 2005.

Ms. Norberry returned to work on October 18, 2005, on a part-time basis, and continued to work until February 2006. Her treating physician, Dr. Michael McNamara, "took her out of work" completely in February 2006. (Docket No. 31 at 2).

---

[2]Unless otherwise noted, these facts are drawn from the parties' summary judgment briefs (Docket Nos. 21, 30, 34, 50, 51) and related affidavits and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

2

Ms. Norberry received short-term disability benefits until November 30, 2005, at which point the benefits were terminated. Ms. Norberry appealed the termination of her short-term disability benefits. On August 16, 2007, she received a final determination of her short-term disability benefits claim. During the appeal process, LINA consistently told Ms. Norberry that her return to work in mid-October 2005 was one of the reasons that her claim for short-term disability benefits was denied. *See* Docket No. 20-1at 8 (letter of December 29, 2005)("[Y]ou have been working part time since October 18, 2005 . . . ."); Docket No. 20-1 at 4 (letter of May 18, 2006)("You returned to work for 4 to 6 hours per day on October 18, 2006 [*sic*.] and we never received a medical update to support why you were unable to perform your occupation on a full time basis. . . .").

Ms. Norberry was terminated or "separated from employment" by EDS on October 9, 2007, having not been "medically released to return to work" by her health care provider and having exhausted all available leave benefits." (Attach. 3 to Docket No. 31).

In October 2007, Ms. Norberry complained in writing to EDS because she "thought that EDS was involved in the denial of her short-term disability and long-term disability benefits." (Docket No. 31 at 2). EDS responded by written correspondence informing her that, because the EDS long-term disability plan is fully-insured through CIGNA,[3] CIGNA is the claims fiduciary for the plan and retains the sole discretion to determine entitlement to benefits under the terms and conditions of the plan. (Attach. 4 to Docket No. 31).

---

[3]CIGNA AbilityReturns is EDS' third-party administrator for its benefits program. (Docket No. 53 n.2). CIGNA AbilityReturns is a part of LINA, and the two names may be used interchangeably. (*Id.*)

3

The parties dispute whether Ms. Norberry has ever filed a claim for long-term disability benefits and whether such a filing is required. Annie Hong, a LINA senior operations representative, testified by affidavit that the plaintiff's claim has not been evaluated to determine eligibility for benefits under the terms of the long-term disability plan because she never filed a claim for long-term disability benefits and has never appealed any alleged denial of long-term disability benefits. (Docket No. 22 at 2). Each letter sent to Ms. Norberry from LINA/CIGNA between December 29, 2005 and August 16, 2007 specifically references her "claim for Short-Term Disability benefits." (*See* Exh. A to Docket No. 20). None of the letters reference any claim by Ms. Norberry for long-term disability benefits. (*Id.*)

Ms. Norberry maintains that she was not required to make a separate application for long-term disability benefits because she was disabled and received short-term disability benefits for more than ninety days. She points to a letter she received from Jerry Fullmer, a EDS "client delivery manager," dated October 9, 2007, stating:

> As you are aware, you were denied short-term disability (STD) benefits beyond November 30, 2005, because CIGNA determined you did not meet the definition of disability under the EDS STD Plan. Similarly, you were denied long-term disability (LTD) benefits because CIGNA determined you did not meet the definition of disability under the EDS LTD Plan.

(Attach. 3 to Docket No. 31).

### B. Plan Documents and Language

In or about February 2005, LINA entered into a "Claim Consulting Agreement" with EDS that was effective retrospectively to January 1, 2004. (Ex. B to Docket No. 20). The Agreement states that "Employer sponsors a self-funded salary continuance payroll practice (the "Plan") for

4

its employees." This Claim Consulting Agreement is in effect for Policy Number SHD 985005, which is EDS' short-term disability plan.

Pursuant to that Agreement, LINA acts as a claims consultant for EDS. EDS relies upon the determinations made by LINA regarding whether employees meet the definition of "disabled" under the terms of the policy. EDS reserves the final decision with respect to all claims:

> Employer shall be responsible for making the final decision with respect to all claims, for communicating such decisions and the amount payable to the claimants and Consultant, and for funding and issuing all benefit payments.

(Ex. B to Docket No. 20, p. 6). Likewise, all liability for payment of claims made under the plan rests with EDS:

> This is not a contract of insurance and Consultant shall not underwrite any risk of the Plan. All liability for payment of claims made under the Plan shall rest with Employer. Consultant acts only as the provider of the services described in this Agreement and, with respect to Plan participants, acts only as the agent of the Employer.

(*Id*. p.4).

Both the 2005 and 2006 EDS short-term disability plans state that a claim is reviewed for eligibility for long-term disability benefits only if the claimant has been out of work for a certain time period:

> If you have been continuously unable to work due to a medical reason for at least 12 weeks and the medical condition is expected to continue beyond 26 weeks, your situation will be reviewed by CIGNA AbilityReturns to determine if you are eligible to receive benefits under EDS' Long-Term Disability program. Given STD benefits end after 26 weeks, early communication and coordination with CIGNA AbilityReturns in this situation is

5

> beneficial.

(Document No. 49-1, pp. 9, 46). The EDS long-term disability plan states:

> If you are out on disability through the integrated disability program, your claim will be automatically evaluated for LTD eligibility if you are disabled for more than three months.
>
> Failure to return the application materials may affect your ability to receive LTD benefits. In addition to completing the forms, you must also obtain a physician's statement that provides your medical condition, including documentation such as test results, office notes and treatment plans. All completed forms and supporting documentation must be sent to Cigna AbilityReturns, as outlined in your packet.

(Document No. 49-1, p. 88).

### III.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *McLean v. 988011 Ontario, Long-term disability.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' "

*Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor* Co., 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

**IV.  Analysis**

    **A.  Whether LINA is a proper party with respect to Norberry's claim for short-term disability benefits**

Plaintiff Norberry has sued both EDS and LINA for the denial of her short-term disability benefits and other health care coverage. Defendant LINA alleges that it is not a proper party to

the lawsuit with respect to any claims for short-term disability benefits or health care coverage under any health care plans administered by a third party.

First, liability for ERISA benefits decisions is imposed not on the administrator but on the entity acting as the final decision-maker with respect to benefits eligibility. *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006); *see also Jameson v. Bethlehem Steel Corp.*, 714 F.2d 140 (6th Cir. 1983)("Under ERISA, a money judgment for benefits . . . is enforceable only against the plan as an entity."); *Oberlin v. South Lorain Merchants Ass'n. Health and Welfare Benefits Plan and Trust*, 2006 WL 1805883, at *1 (N.D. Ohio Jun. 29, 2006)("According to [29 U.S.C. § 1132(d)(2)], a third-party administrator is not a proper party to a suit for a money judgment concerning denied benefits."). Pursuant to the Claim Consulting Agreement between EDS and LINA, although LINA provided consulting services to EDS regarding short-term disability claims, LINA did not have the ultimate authority to grant or deny those claims. EDS reserves the final decision with respect to all claims. Thus, LINA is not a proper party to any claim related to the denial of short-term disability benefits.

Second, LINA maintains that, in any event, the plaintiff's claims under the EDS short-term disability plan are not governed by ERISA. By its specific language, ERISA only applies to "employee benefit plans," which are defined as any "employee pension benefit plan" or "employee welfare benefit plan." 29 U.S.C. § 1002(3). Under ERISA, the terms "employee welfare benefit plan" and "welfare plan" are defined as:

> any plan, fund, or program which has heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the
>
> purchase of insurance or otherwise . . . benefits in the event of

8

> sickness, accident, disability, death, or unemployment . . . .

29 U.S.C. § 1002(1).

Regulations issued by the Secretary of Labor specifically exclude "payroll practices" from the definition of "employee welfare benefit plan." 29 C.F.R. § 2510.3-1(b). "Payroll practices" are defined by the regulations as:

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) . . . .

29 C.F.R. § 2510.3-1(b)(2). The rationale for this exclusion as explained by the Supreme Court is:

> In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds . . . . To that end, it established extensive reporting, disclosure, and fiduciary requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator. Because ordinary vacation payments are typically fixed, due at known times, and do not depend on contingencies outside the employee's control, they present none of the risks that ERISA is intended to address. If there is a danger of defeated expectations, it is no different from the danger of defeated expectations of wages for services performed--a danger Congress chose not to regulate in ERISA.

*Massachusetts v. Morash*, 490 U.S. 107, 115 (1989). Thus, "participants in a plan funded from the general assets of the employer–as opposed to those funded by a trust–do not face a threat of non-payment of their benefits based on the improper management of the trust; rather the security of their benefits is based on the financial health of the employer." *Hall v. ESIS, Inc.*, 2005 WL

9

2033500, at *3 (E.D. Mich. Aug. 19, 2005)(citing *Morash*).

In *Langley v. Daimler-Chrysler Corp.*, 502 F.3d 475 (6th Cir. 2007), the Sixth Circuit Court of Appeals affirmed a district court's finding that a short-term disability plan was a payroll practice not subject to ERISA because the benefits were paid from the employer's general assets. *Id.* at 480. Quoting the Department of Labor's regulations,[4] the Court explained that "'normal compensation' paid to an employee as a result of disability and from 'the employer's general assets' does not constitute an employee welfare benefit plan, but instead is considered a 'payroll practice.'" *Id.* (quoting 29 C.F.R. § 2510.3-1(b)(2)); *see also Capriccioso v. Henry Ford Health Sys.*, 2000 WL 1033030, at **2-3 (6th Cir. July 17, 2000)(concluding that an employer's salary continuation benefits constituted a "payroll practice" excluded from ERISA, as "[t]he staff members are relying on the financial health of [the employer], not that of the long-term disability carrier, for payment of [benefits]"; noting that the employer never maintained records consistent with ERISA's requirements with respect to the plan at issue and had not submitted or filed any documents or forms with the Department of Labor or Internal Revenue Service identifying or representing in any way that the plan constituted an employee welfare benefit plan under ERISA).

Here, LINA argues that the EDS short-term disability plan does not constitute an "employee benefit plan" as required by ERISA because benefits under this program are paid out of EDS' general assets as a "payroll practice," not an employee welfare benefit plan. The

---

[4]The authority to define ERISA's "accounting, technical, and trade terms" is specifically given to the Secretary of Labor. *Morash*, 490 U.S. 107, 116 (citing ERISA § 505, 29 U.S.C. § 1135). In *Morash*, the Supreme Court found that "the precise coverage of ERISA is not clearly set forth in the Act" and that the Secretary made a reasonable determination that vacation pay paid out of the employer's general assets constitutes a payroll practice. *Id.* at 113, 120-21.

10

defendant has adduced facts showing that the EDS short-term disability plan is an EDS payroll practice. For example, the Claim Consulting Agreement between EDS and LINA provides that "Employer sponsors a self-funded salary continuance payroll practice (the "Plan") for its employees." It further provides that "All liability for payment of claims made under the Plan shall rest with Employer." Annie Hong, LINA's senior operations representative, testified by affidavit that this Claim Consulting Agreement is in effect for Policy Number SHD 985005, which is EDS' short-term disability plan. (Docket No. 22 at 2).

The plaintiff has not set forth any facts to the contrary. The court finds that the EDS short-term disability plan is a payroll practice not governed by ERISA. Thus, the plaintiff's claims for denial of short-term disability benefits under ERISA fail, and LINA's request for summary judgment on this issue will be granted. *See Walker v. Toyota Mfg. Kentucky, Inc.*, 2008 WL 2725802 (E.D. Ky. July 10, 2008)(after "carefully reviewing" the evidence, finding that benefits paid under defendant employer's short-term disability program were treated as regular payroll and were paid out of employer's general assets and therefore were exempt from ERISA); *Hall v. ESIS, Inc.,* 2005 WL 2033500 (E.D. Mich. Aug. 19, 2005)(granting defendant's summary judgment motion, finding that the undisputed evidence established that DaimlerChrysler funds the group sickness and accident plan with general corporate assets and treats the plan as a payroll practice exempt from ERISA coverage).

### B. Whether plaintiff has exhausted her administrative remedies with respect to her long-term disability benefits claim

In addition to short-term disability benefits, plaintiff Norberry also seeks long-term disability benefits. LINA contends that the plaintiff's claim for long-term disability benefits should be dismissed because she has failed to exhaust her administrative remedies. According to

11

LINA, she has never filed a claim for long-term disability benefits, nor has she ever appealed any of the denials she received on the grounds that she was seeking long-term disability benefits.

The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir. 1991); s*ee Hill v. Blue Cross & Blue Shield of Mich.,* 409 F.3d 710, 717 (6th Cir. 2005) (finding that it is "well settled" that "ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim"). Failure to exhaust may be excused in circumstances where "resort to the administrative route is futile or the remedy inadequate." *Constantino v. TRW, Inc*., 13 F.3d 969, 974 (6th Cir. 1994).

Exhaustion of administrative remedies is necessary to minimize the number of frivolous ERISA lawsuits, promote the consistent treatment of benefit claims, provide a nonadversarial dispute resolution process, and decrease the cost and time of claims settlement. *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 453 (6th Cir. 1991)(citing *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir. 1989)). It also enables plan fiduciaries to efficiently manage their funds, correct any errors, interpret plan provisions, and assemble a complete administrative record that assists a court in reviewing the fiduciaries' actions, if litigation is ultimately sought. *Id.*

Dismissal on grounds of failure to exhaust is especially important in instances where the plaintiff may be attempting to circumvent the denial of benefits claim by also alleging breach of fiduciary duty. *See Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 91 (6th Cir. 1997)("[T]he basis of this claim is the denial of benefits, which plaintiff had an obligation to appeal before he sued in federal court. Plaintiff cannot get around the exhaustion requirement by simply

disguising his claim as a breach of fiduciary duty.").

In this case, the plaintiff has alleged both denial of benefits and breach of fiduciary duty. Defendant LINA contends that she has attempted to circumvent the fact that she has failed to exhaust her administrative remedies by bringing a breach of fiduciary claim and merging her short-term disability claim and long-term disability claim for benefits into one single denial of benefits allegation. (Docket No. 21 at 8). The court agrees that these claims are separate claims that must receive separate analysis during claims administration. The evidence before the court shows that Ms. Norberry applied for and received short-term disability benefits from August 1, 2005, until November 30, 2005. CIGNA notified Ms. Norberry by letter dated December 29, 2005, that her benefits were terminated as of November 30, 2005, because she had returned to work on a part-time basis in October 2005 and her treating physician had not provided medical documentation to support his opinion that she was unable to perform all the material duties of her job. Ms. Norberry appealed the termination of her short-term disability benefits and received written denial of her appeal by CIGNA dated January 24, 2006.

Ms. Norberry was permitted a second, voluntary appeal of her denial of short-term benefits, in support of which she submitted some additional medical documentation, but CIGNA upheld its previous decision by letter dated May 18, 2006. CIGNA performed a further review of Ms. Norberry's appeal and notified her by letter dated August 16, 2007, that it was affirming its previous denials of the continuation of her short-term disability benefits. In this letter, CIGNA informed Ms. Norberry that it considered her to have exhausted "all administrative remedies" with its office.

Each letter sent to Ms. Norberry from LINA/CIGNA between December 29, 2005 and August 16, 2007 specifically references her "claim for Short-Term Disability benefits." (*See*

13

Exh. A to Docket No. 20). None of the letters reference any claim by Ms. Norberry for long-term disability benefits. (*Id.*) Annie Hong, a senior operations representative for LINA, testified by affidavit that the administrative review received by Ms. Norberry was "related solely to her short term disability claim, and not to a long term disability claim." (Docket No. 22 at 2).

In response, the plaintiff contends that LINA/CIGNA should have automatically evaluated her eligibility for long-term disability benefits after ninety days. (Docket No. 30 at 1-2). However, the summary plan description language cited by Ms. Norberry states: "If you are out on disability through the integrated disability program, your claim will be automatically evaluated for LTD eligibility if you are disabled for more than three months." (Document No. 49-1, p. 88). This language indicates that a claimant must have been "out on disability" and "disabled" for at least three months in order to be automatically considered for long-term disability benefits. It does not, as the plaintiff alleges, state that the *payment* of benefits for ninety days triggers automatic consideration.

Ms. Norberry was "out on disability" only from August 1, 2005 through October 17, 2005. This fact is undisputed. She worked part-time from mid-October 2005 until sometime in February 2006. This fact is also undisputed. Consequently, she could not have been "disabled" for purposes of short-term disability benefits if she was working; the plan defines "disability" as, in part, being "unable to perform *all* the material duties of his or her job)(emphasis added). The evidence before the court demonstrates that the plaintiff did not meet the requirements for disability such that her claim should be construed as one for long-term disability benefits because she was not out on disability and disabled for more than three months. Thus, at no point was her short-term disability claim at a stage where it would evolve into a long-term disability claim.

14

The plaintiff attempts to create a genuine issue of fact as to whether LINA considered her for long-term disability benefits by pointing to a letter from EDS dated October 9, 2007. (*See* Attach. 3 to Docket No. 31). In this letter Ms. Norberry was advised that she had been denied long-term disability (LTD) benefits "because CIGNA determined that [she] did not meet the definition of disability under the EDS LTD Plan." (*Id.*)

However, this letter was written by an EDS manager. There is no evidence that this manager is or was an agent of LINA. An examination of the letter as a whole reveals that its primary purpose was to notify Ms. Norberry of her termination or "separation" from EDS employment because she had exhausted all available leave benefits to her. The letter does not directly concern Ms. Norberry's benefits claims. In fact, the manager's characterization of CIGNA's disposition of Ms. Norberry's claim contradicts the evidence before the court: that LINA never characterized Ms. Norberry's appeal or its review of her benefits as a long-term disability claim. In fact, LINA consistently addressed the plaintiff's administrative appeal of the denial of her benefits as strictly an appeal of the denial of continued short-term disability benefits beyond November 30, 2005.

"[W]hen reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made." *Miller*, 925 F.2d at 986. The "evidence available to the administrator at the time the final decision was made" is called the "administrative record." *Id.* In ERISA claims, the court's review is typically "based solely upon the administrative record." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

Although her short-term disability claim has gone through the administrative process,

there is no evidence that her long-term disability claim has ever been made. In short, there is no administrative record before the court with regard to Ms. Norberry's purported long-term disability claim. Under these circumstances, she cannot step directly into federal court. Accordingly, the court must dismiss Ms. Norberry's claim for long-term disability benefits for failure to exhaust administrative remedies.

## V. Conclusion

For the reasons expressed herein, defendant LINA's Motion for Summary Judgment (Docket No. 20) will be granted. The plaintiff's claim against LINA that she was wrongfully denied short-term disability benefits or other health care coverage under the Electronic Data Systems Short-Term Disability Plan will be dismissed. Further, the court finds that the plaintiff has failed to exhaust her administrative remedies with respect to any alleged claim for long-term disability benefits. This claim, too, will be dismissed.

An appropriate order will enter.

                                                     ALETA A. TRAUGER
                                                     United States District Judge